**PEOPLE OF ENEWETAK, Rongelap, and Other Marshall Islands Atolls, Plaintiffs–Appellants,**

v.

**The UNITED STATES, Defendant–Appellee.**

Nos. 88–1207, 88–1208.

United States Court of Appeals, Federal Circuit.

Dec. 8, 1988.

specifies that the parties may fix by agreement, as the parties here fixed, a time which is not manifestly unreasonable.").

Abram Chayes, Harvard Law School, Cambridge, Mass., argued for plaintiffs-appellants. With him on the brief was Anne-Marie Burley. David R. Anderson, Wilmer, Cutler & Pickering, Washington, D.C., argued for plaintiffs-appellants. With him on the brief were Lloyd N. Cutler, Andrew B. Weissman and Stephen J. Schnably. Also on the brief were E. Cooper Brown, Marshall Islands Atomic Testing Litigation Project, Takoma Park, Md., Richard F. Gerry, Casey, Gerry, Casey, Westbrook & Reed, San Diego, Cal., and Fred Baron, Baron & Budd, of Dallas, Tex.

John T. Stahr, Dept. of Justice, Washington, D.C., argued for defendant-appellee. With him on the brief were Roger J. Marzulla, Asst. Atty. Gen., Jacques B. Gelin and Gary B. Randall. Also on the brief was Howard L. Hills, U.S. Dept. of State, Washington, D.C., of counsel.

Before SMITH, Circuit Judge, SKELTON, Senior Circuit Judge, and NIES, Circuit Judge.

NIES, Circuit Judge.

These appeals are from the final judgments of the Claims Court in *Peter v. United States*, 13 Cl.Ct. 691 (1987), and *Nitol v. United States*, 13 Cl.Ct. 690 (1987), dismissing the complaints of inhabitants of the Enewetak, Rongelap, and other Marshall Islands Atolls for lack of subject matter jurisdiction. In dismissing the subject complaints, the Claims Court relied on its decision of the same date in *Juda v. United States*, 13 Cl.Ct. 667 (1987),[1] a closely related case involving claims by inhabitants of Bikini Atoll. In *Juda*, the Claims Court held that it lacked subject matter jurisdiction over claims by inhabitants of the Marshall Islands because the consent of the United States to be sued on those claims had been withdrawn by an act of Congress in conjunction with the establishment of a Marshall Islands Claims Tribunal funded by the United States.[2] We affirm.

I

In early 1980, complaints were filed in the United States Court of Claims by inhabitants of the Marshall Islands, asserting individual damage claims resulting from a United States nuclear testing program in the Marshall Islands lasting from June 30, 1946 through August 18, 1958. Certain claims were held to be viable under the Tucker Act, 28 U.S.C. § 1491(a)(1) (1982), hence trial preparations relating to those claims proceeded.

While the individual inhabitants were pursuing their claims before the Claims Court, the governments of the United States and of the Marshall Islands negotiated and signed a Compact of Free Association (Compact) and its related agreements. The Compact was approved by plebiscite votes in the Marshall Islands; that approval was certified to the United States Government on February 24, 1986. Legislation approving the Compact was submitted to Congress in 1985 and was signed into law by the President on January 14, 1986, thereby becoming the Compact of Free Association Act of 1985, Pub.L. No. 99–239, 99 Stat. 1770 (1986) (Act).

Under section 177 of the Compact, the United States Government accepted responsibility for the just compensation owing for loss or damage resulting from its nuclear testing program. The United States Government committed an initial sum of

1. The claimants in *Juda* also appealed. That appeal was dismissed with prejudice upon the unopposed motion of claimants, following the enactment of special legislation which appropriated funds for the benefit of the People of Bikini. *People of Bikini, Enewetak, Rongelap, Utrik & Other Marshall Islands Atolls v. United States*, 859 F.2d 1482 (Fed.Cir.1988).

2. Because the cited opinion details the historical background of the nuclear testing program, the Compact of Free Association, the section 177 Agreement, and the Compact Act, as well as the procedural background involved in these appeals, we have not reiterated such matters here.

$150,000,000, with additional financial obligations over fifteen years for the settlement of all claims.[3] The initial amount was to establish a Claims Settlement Fund (Fund), and that amount has been appropriated. The payment and distribution of money from that Fund is to be made in accordance with provisions set forth in a separate agreement (section 177 Agreement), referenced in the Act, between the governments of the United States and the Marshall Islands. That agreement, *inter alia,* creates a Claims Tribunal which will administer the Fund in conjunction with the settlement of claims. In that regard, Article XII of the section 177 Agreement provides:

> All claims described in Articles X and XI of this Agreement shall be terminated. No court of the United States shall have jurisdiction to entertain such claims, and any such claims pending in the courts of the United States shall be dismissed.

Once the Act became law, the government moved to dismiss each case. After oral argument on the motion and additional briefing, the court granted the government's motions to dismiss, and final judgments of dismissal were subsequently entered.

The Claims Court agreed with the government that pursuant to Article XII of the section 177 Agreement, the consent of the United States to be sued in the Claims Court, on appellants' claims arising from the nuclear testing program conducted by the United States in the Marshall Islands, had been withdrawn in conjunction with the establishment of an alternative tribunal to provide just compensation.[4]

Appellants acknowledge that "Congress can, of course, provide alternative modes of compensation for Fifth Amendment takings." While appellants assert broadly that the "alternative remedy is manifestly incapable of providing meaningful relief," their principal argument is, in essence, that no alternative remedy can be constitutionally "adequate" unless it preserves ultimate resort to the Tucker Act, citing *Blanchette v. Connecticut General Insurance Corp.,* 419 U.S. 102, 124–25, 95 S.Ct. 335, 349, 42 L.Ed.2d 320 (1974), as well as *Ruckelshaus v. Monsanto Co.,* 467 U.S. 986, 104 S.Ct. 2862, 81 L.Ed.2d 815 (1984) and *Dames & Moore v. Regan,* 453 U.S. 654, 101 S.Ct. 2972, 69 L.Ed.2d 918 (1981). The Claims Court held that appellants' attack on the "adequacy" of the alternative procedure provided by Congress for compensation of their claims was premature. *Juda,* 13 Cl.Ct. at 689.

We cannot agree that the Claims Court committed legal error in its ruling. The Act and the section 177 Agreement, provide, in perpetuity, a means to address past, present and future consequences, including the resolution of individual claims, arising from the United States nuclear testing program in the Marshall Islands between June 30, 1946 and August 18, 1958. Congress intended the alternative procedure to be utilized, and we are unpersuaded that judicial intervention is appropriate at this time on the mere speculation that the alternative remedy may prove to be inadequate. Indeed, the recent appropriation by Congress for other Marshall Islanders, supplementing an existing Resettlement Trust Fund, *see supra* note 1, evidences Congress's concern that its alternative provision for compensation be adequate. Fur-

---

**3.** In addition, Article IX of the referenced section 177 Agreement provides:

*Changed Circumstances*

If loss or damage to property and person of the citizens of the Marshall Islands, resulting from the Nuclear Testing Program, arises or is discovered after the effective date of this Agreement, and such injuries were not and could not reasonably have been identified as of the effective date of this Agreement, and if such injuries render the provisions of this Agreement manifestly inadequate, the Govern-

ment of the Marshall Islands may request that the Government of the United States provide for such injuries by submitting such a request to the Congress of the United States for its consideration. It is understood that this Article does not commit the Congress of the United States to authorize and appropriate funds.

**4.** Because we affirm the decision of the Claims Court to dismiss appellants' complaints for lack of subject matter jurisdiction, we need not address other issues.

ther, appellants overstate the holding in *Blanchette*. The Court did not hold that a fallback Tucker Act claim was necessary to sustain the constitutionality of every alternative procedure for compensation. In *Blanchette*, such claim remained available; therefore, the Court did not have to decide that issue. In any event, we do not read *Blanchette* to mandate such a determination in advance of the exhaustion of the alternative provided.

## II

For the foregoing reasons, the judgments of the Claims Court in the *Peter* and *Nitol* cases are affirmed, and we adopt that court's more extensive analysis in *Juda v. United States*, 13 Cl.Ct. 667 (1987), relating to the issues discussed above.

AFFIRMED.